UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WESTERN HERITAGE INSURANCE COMPANY, an Arizona corporation,<br><br>                Plaintiff,<br><br>       v.<br><br>CYRIL HOOVER DBA OKANOGAN VALLEY TRANSPORTATION; ERIC MALKUCH; and ALBERT SLATER,<br><br>                Defendants. | Case No. C15-1154RSM<br><br>ORDER  GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT SLATER'S CROSS-MOTION FOR SUMMARY JUDGMENT |

## I.     INTRODUCTION

THIS MATTER comes before the Court on Plaintiff Western Heritage Insurance Company's ("WHIC") and Defendant Albert Slater's ("Slater") Cross-Motions for Summary Judgment. Dkts. #24 and #31. These parties both seek judgments as a matter of law with respect to coverage under a Commercial General Liability ("CGL") policy issued by WHIC to Defendant Cyril Hoover d/b/a/ Okanogan Valley Transportation (hereinafter collectively "Mr. Hoover" or "Defendant Hoover"). Defendant Hoover has opposed Plaintiff's Motion for Summary Judgment, arguing that issues of material fact preclude judgment as a matter of law, or, in the alternative, that further discovery must occur and therefore a stay of the motion under Federal Rule of Civil Procedure 56(d) is appropriate. Dkt. #29.

ORDER
PAGE - 1

Having reviewed the record before it, and having determined that oral argument is not necessary on these motions, the Court now GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Summary Judgment and DENIES Defendant Slater's Cross-Motion for Summary Judgment for the reasons discussed herein.

## II.     BACKGROUND

The sequence of events leading up to this action is largely undisputed.  In August of 2010, Mr. Hoover applied for a Commercial General Liability policy with WHIC to cover the business premises located at 32156 Hwy 97, Tonasket, WA 98855.  Dkt. #26, Ex. B at 3-12. Mr. Hoover provides cab services to, *inter alia*, those with medical needs.  *Id*. at 7 and 11. WHIC issued CGL Policy No. SCP0817517 to named Insured Okanogan Valley Transportation/Cyril K. Hoover DBA effective August 26, 2010 to August 26, 2011.  Dkt. #26, Ex. C, at 1 and 43-44.  The WHIC Policy had limits of $1 million per occurrence.  *Id*. at 9.  The Policy contained a "Limitation to Designated Premises or Project" Endorsement which purports to limit coverage under the policy to the Tonasket property listed in the Declarations Page and in the schedule on that Endorsement.  *Id*. at 31.  The policy required Mr. Hoover to "have auto limits equal to or greater then [sic] the GL limits."  Dkt. #26, Ex. B at 2.  In addition, the policy excluded products-completed operations coverage (which generally covers losses away from the insured premises), and Mr. Hoover was required to secure separate coverage for commercial auto risks.  *Id*. at 2, 13, and 16.  The WHIC Policy also contained an "auto exclusion" that precluded coverage for liability arising from the "use" of an auto loaned to an "insured."  Dkt. #26, Ex. C at 16.  The policy defined the term "insured" to include, *inter alia*, employees of Mr. Hoover acting within the course and scope of their employment.  *Id.* at 21.

ORDER
PAGE - 2

On March 10, 2011, Defendant Eric Malkuch was driving a 2000 Subaru Outback that he borrowed from his step father-in-law, Randy Stevenson.  Mr. Malkuch's wife, Becky, and Defendant Slater were passengers in the vehicle.  *See* Dkt. #25, Ex. D.  Mr. Malkuch was driving southbound on Road SR 31, at Mile Post 88 near Lakeview, Oregon.  The vehicle was involved in a single-vehicle rollover accident.  *Id*., Ex. D at ¶ 13.  The cause of the accident is in dispute; however, for the reasons discussed below, the cause is immaterial to the instant matter.  Mr. Slater alleges that he sustained serious and ongoing injuries in the accident, totaling more than $400,000 in medical costs to date.  *Id*., Ex. D at ¶ 18 and Dkt. #31 at 3.  According to Mr. Slater, Mr. Hoover is liable for the underlying auto accident because the accident occurred while Mr. Malkuch and Mr. Slater were on their way to Arizona to pick up a tow truck, which Mr. Slater alleges was for the benefit of Mr. Hoover. Dkt. #25, Ex. D at ¶ 15.

PEMCO issued an Auto Liability Policy No. CA 0555071 to named Insured Randy Stevenson, effective from June 10, 2010 to June 10, 2011. Dkt. #26, Ex. A and 1 and 3-27. By its terms, the PEMCO Policy was primary.  *Id*. at 25.  It covered the 2000 Subaru Legacy Outback involved in the accident.  *Id*. at 3.  The "bodily injury" limits were $250,000 per person.  *Id*.  The PEMCO Policy contained an "omnibus" provision under which permissive users of the auto and those alleged to be legally liable for such permissive user's acts qualified as Insureds.  *Id*. at 10.

On January 9, 2013, Mr. Slater filed a Complaint against Mr. Hoover, Mr. Malkuch, and others in Snohomish County Superior Court.  *See Albert Slater v. Eric Malkuch, et al.*, Case No. 13-2-01938-6.; Dkt. #25, Ex. A.  The Complaint alleged that Mr. Slater was a passenger lying on the rear seat of the vehicle that Mr. Malkuch was driving in Oregon when Mr. Malkuch fell asleep at the wheel. Dkt. #25, Ex. A at ¶ 11.  It further alleged that Mr.

ORDER
PAGE - 3

Malkuch, as the agent and/or employee of Mr. Hoover, was to drive Mr. Slater to purchase a tow truck and drive the truck back to Washington.  Dkt. #25 at ¶ 13.  Mr. Slater alleged that Mr. Hoover arranged this for his own business interests.  *Id*.  Mr. Hoover disputes that.  Dkt. #24 at 3 fn. 5.  The Complaint set forth a single cause of action for Negligence.  Dkt. #25 at ¶ ¶ 11-18.  Mr. Slater alleged that Mr. Malkuch was working for Mr. Hoover at the time of the accident such that the doctrine of vicarious liability applied.  *Id*. at ¶ 15.

On February 6, 2015, Mr. Slater filed an Amended Complaint ("FAC").  Dkt. #25, Ex. D.  It alleged that Mr. Malkuch borrowed the vehicle from Mr. Stevenson "for the purpose of driving down to Arizona on behalf of and in connection with Mr. Malkuch's business, defendant Okanogan Valley Transportation."  *Id*. at ¶ 14.  The FAC further alleged that Mr. Hoover and his business entered into an independent contractor agreement with Mr. Slater to provide maintenance to the fleet of business vehicles, to loan him money to purchase a tow truck, and "by and through its partner, agent and/or employee, defendant Eric Malkuch, to drive plaintiff Slater in Mr. Stevenson's vehicle. . . to purchase the tow truck and to drive it back to Washington."  *Id*. at ¶ 15.  Mr. Slater also alleged that "[a]ll acts of negligence by defendant Malkuch are the acts of all other and remaining defendants by virtue of all theories of vicarious liability including but not limited to Partnership, Master/Servant Liability, Agent/Principal liability, Owner/Operator liability, Joint Venture liability and Negligent Entrusting holding defendants, and each of them, jointly and severally liable for plaintiff's injuries."  *Id*. at ¶ 17.

PEMCO agreed to defend all defendants in the underlying state court action under a reservation of rights, and is currently defending.  *See* Dkt. #25, Ex. C.  WHIC also elected to retain separate defense counsel for Mr. Hoover under a reservation of rights.  *Id.*  In its original reservation, WHIC indicated that if Mr. Malkuch is found not to have acted in the course and

ORDER
PAGE - 4

scope of employment for Mr. Hoover, there can be no liability on Mr. Hoover's part and therefore no duty to indemnify.  Dkt. #25, Ex. C at 12, ¶ 2.  WHIC further indicated that if Mr. Malkuch is found to have acted in the course and scope of his employment for Mr. Hoover, the "auto exclusion" applies to bar coverage.  *Id*., Ex. C, p. 12, ¶ 2 and Dkt. #26, Ex. C at 16 and 21.  WHIC further reserved rights under the Designated Premises Limitation Endorsement, on the ground the policy was not intended to cover offsite auto accidents like the one in question.  Dkt. #25, Ex. C at 12, ¶ 4 – 13, ¶ 1.  On March 5, 2015, WHIC sent an amended reservation of rights letter regarding the FAC, reiterating the same bases for its reservation.  Dkt. #25, Ex. G.  WHIC also noted that its policy could at best be excess to auto policies issued by PEMCO and GEICO.  *Id*. at 12, ¶¶2-3 and 13, ¶ 2.

In the meantime, WHIC brought the instant Declaratory Relief Action against Defendants Hoover, Malkuch and Slater in this Court, on July 20, 2015.  Dkt. #1.  WHIC alleges that it owes no coverage for the offsite accident in Oregon based on, *inter alia*, its "auto exclusion" and "designated premises limitation."  Dkt. #1 at ¶ ¶ 24, 26 and 27.  WHIC further alleges that, as of right, it voluntarily elected to defend the underlying action despite the lack of coverage.  *Id*. at ¶ 14.  In addition, WHIC alleges that even if the Court were to find it owed coverage, such coverage would be strictly excess to that of PEMCO and GEICO.  *Id*. at ¶ 29.  WHIC seeks a declaration that it owes no duty to defend or indemnify.  Dkt. #1, Section VIII.

Defendant Slater has Answered the Complaint and brings a Counterclaim alleging that the WHIC policy does provide coverage for the underlying auto accident, and asking the Court to issue a declaratory judgment that WHIC has a duty to indemnify in the underlying action regardless of any coverage by PEMCO or GEICO.  Dkt. #10, Section III.

Defendant Hoover has Answered the Complaint and brings a Counterclaim alleging that the WHIC policy does provide coverage for the underlying auto accident, and asking the Court to issue a declaratory judgment that WHIC has a duty to defend and indemnify in the underlying action regardless of any coverage by PEMCO or GEICO.  Dkt. #13, Counterclaim at ¶¶ 1-4.

Mr. Malkuch has been voluntarily dismissed as a Defendant to this action under an agreement that he will be bound by any final judgment issued in this matter.  Dkt. #28.

### III.     DISCUSSION

**A.  Summary Judgment Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).   In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).  Material facts are those which might affect the outcome of the suit under governing law.  *Anderson,* 477 U.S. at 248.

**B.  Hoover's Rule 56(d) Motion**

As an initial matter, the Court addresses Mr. Hoover's motion for a stay to conduct further discovery under Federal Rule of Civil Procedure 56(d).  The Court DENIES Mr. Hoover's motion for his failure to meet the standard set forth under Rule 56(d).

Rule 56(d) states:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

ORDER
PAGE - 6

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

The Ninth Circuit Court of Appeals has explained that a party requesting relief pursuant to Rule 56(d) "must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006).  Mr. Hoover has failed to do so.  *See* Dkt. #30.  Moreover, for the reasons discussed below, the additional information apparently sought by Mr. Hoover in this matter would not change the Court's decision regarding coverage.

## C.  Motions to Strike

The Court next addresses the parties' motions to strike.

### 1.  *Plaintiff's Motion to Strike*

Plaintiff seeks to strike the Declaration of Mr. Slater filed in support of his cross-motion for summary judgment.  Dkt. #34 at 3.  Plaintiff argues that it should be stricken on the basis that it is made without personal knowledge, that it contains impermissible hearsay, that it contains pure speculation and conjecture, and that it is irrelevant.  *Id.*  The Court DENIES the motion.  Mr. Slater testifies that his statements are made based on personal knowledge, and Plaintiff presents no specific evidence to the contrary.  Nor does Plaintiff provide evidence contradicting that Mr. Hoover made certain decisions regarding the tow truck from his business premises.  Further, as discussed below, the statements provided by Mr. Slater are relevant to the coverage analysis.

///

ORDER
PAGE - 7

*2.  Defendant Slater's Motion to Strike*

Defendant Slater seeks to strike Exhibits C and G to the Declaration of Alan Yuter, which were filed in support of Plaintiff's motion for summary judgment and its opposition to Defendant Slater's cross-motion for summary judgment.  Dkt. #38 at 8-9.  Mr. Slater argues that these letters contain hearsay and double hearsay, are irrelevant, and contain improper conclusions of law which are in the province of the Court.  *Id.*  The Court DENIES Defendant Slater's motion to strike the exhibits completely, but notes that it will only consider the exhibits to the extent that they evidence a claim denial by Plaintiff and the bases for the denial, but not for any other purpose.

**D.  Interpretation of Insurance Contracts**

The Court now turns to the substantive questions raised in these motions.  Under Washington law, "[i]nsurance policies are to be construed as contracts, and interpretation is a matter of law."  *State Farm General Ins. Co. v. Emerson*, 102 Wn.2d 477, 480, 687 P.2d 1139 (1984).  "The entire contract must be construed together in order to give force and effect to each clause," and be enforced "as written if the language is clear and unambiguous."  *Washington Pub. Util. Districts' Utils. Sys. v. Pub. Util. Dist. No. 1 of Clallam County ("Washington Pub.")*, 112 Wn.2d 1, 10, 771 P.2d 701 (1989); *see also Transcon. Ins. Co. v. Washington Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 456 (1988) (explaining that if insurance contract language is clear and unambiguous, court "may not modify the contract or create ambiguity where none exists").  If, on the other hand, "a policy provision on its face is fairly susceptible to two different but reasonable interpretations, the policy is ambiguous and the court must attempt to discern and enforce the contract as the parties intended."  *Transcon.*

*Ins. Co.*, 111 Wn.2d at 456-57; *see also Kish v. Ins. Co. of N. Am.*, 125 Wn.2d 164, 171, 883 P.2d 308 (1994).

An insurance contract "will be given a practical and reasonable interpretation that fulfills the object and purpose of the contract rather than a strained or forced construction that leads to an absurd conclusion, or that renders the contract nonsensical or ineffective." *Washington Pub.*, 112 Wn.2 at 11; *see also Transcon. Ins. Co.*, 111 Wn.2d at 457. Further, insurance contracts are interpreted "as an average insurance purchaser would understand them and give undefined terms in these contracts their 'plain, ordinary, and popular' meaning." *Kish*, 125 Wn.2d at 170 (quoting *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877, 784 P.2d 507 (1990)); *see also Emerson*, 102 Wn.2d at 480 (stating that an insurance contract should be interpreted "according to the way it would be understood by the average insurance purchaser"). If, after attempting to discern the parties' intent, the insurance contract language remains ambiguous, "the court will apply a meaning and construction most favorable to the insured, even though the insurer may have intended another meaning." *Transcon. Ins. Co.*, 111 Wn.2d at 457; *see also Washington Pub.*, 112 Wn.2d at 10-11.

The determination of coverage under an insurance contract "is a two-step process." *Diamaco, Inc. v. Aetna Cas. & Sur. Co.*, 97 Wn. App. 335, 337, 983 P.2d 707 (1999). "The insured must first establish that the loss falls within the 'scope of the policy's insured losses.'" *Id.* (quoting *Schwindt v. Underwriters at Lloyd's of London*, 81 Wn. App. 293, 298, 914 P.2d 119 (1996)). "Then, to avoid responsibility for the loss, the insurer must show that the loss is excluded by specific language in the policy." *Id.*; *see also Pub. Employees Mut. Ins. Co. v. Rash*, 48 Wn. App. 701, 703, 740 P.2d 370 (1987) ("[W]hen an insured establishes a prima facie case giving rise to coverage under the provisions of his policy, the burden is then upon the

ORDER
PAGE - 9

insurer to prove that the loss is not covered because of an exclusionary provision in the policy."). While an exclusionary clause is "strictly construed against the insurer," its meaning "must be determined in view of the policy as a whole." *Allstate Ins. Co. v. Calkins*, 58 Wn. App. 399, 402, 793 P.2d 452 (1990) (citing *Rodriguez v. Williams*, 107 Wn.2d 381, 384, 729 P.2d 627 (1986)); *Hecker*, 43 Wn. App. at 824 (citing *Shotwell v. Transamerica Title Ins. Co.*, 91 Wn.2d 161, 166, 588 P.2d 208 (1978)).

    *1. Coverage*

    Plaintiff moves this Court for an Order declaring that it owes no coverage or duty to indemnify because the losses alleged by Defendants do not fall within the coverage under the CGL policy, and even if they did, the policy contains an auto exclusion that excludes the losses claimed by Defendants. Dkt. #24 at 1. As noted above, the determination of coverage under an insurance contract "is a two-step process." *Diamaco, Inc. v. Aetna Cas. & Sur. Co.*, 97 Wn. App. 335, 337, 983 P.2d 707 (1999). "The insured must first establish that the loss falls within the 'scope of the policy's insured losses.'" *Id.* (quoting *Schwindt v. Underwriters at Lloyd's of London*, 81 Wn. App. 293, 298, 914 P.2d 119 (1996)).

    The CGL policy pays "those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies. Dkt. #26, Ex. C at 13. Plaintiff argues that this coverage is limited only to bodily injury arising out of the designated premises in Tonasket, WA, and therefore the losses from the auto accident 500 miles away in Oregon do not fall within the scope of coverage. Plaintiff argues that this is evidenced by the inclusion of a Limitations to Designated Premises Endorsement, which demonstrates the intent of the policy coverage. Dkt. #24 at 8-12.

ORDER
PAGE - 10

Defendant Hoover argues that the policy cannot be restricted to a mere premises liability policy as Plaintiff seeks.  Dkt. #29 at 9-12.  Defendant Slater argues that coverage is provided because it does not exclude losses claimed under either a vicarious liability theory or under an agency theory.  Dkt. #31.  The Court now finds that the Limitations to Designated Premises Endorsement clause is ambiguous, and therefore does not exclude coverage.

It is true, as Plaintiff argues, that the Endorsement specifically modifies the insurance provided:

> This endorsement modifies Insurance provided under the following:
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> . . .
>
> Premises:
> 32156 Hwy 97
> Tonasket, WA 98855
>
> . . .
>
> This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:
>
> 1.  The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises;
>
> . . .

Dkt. #26, Ex. C at 31.  However, *how* the Endorsement modifies the insurance is ambiguous.

Washington courts do not appear to have interpreted the specific language at issue. Indeed, Defendant Slater points to a Washington case that interprets a clause pertaining to "business conducted at or from the premises," which is not the same language contained in the policy at issue here.  *See, e.g., Am. Nat'l Fire Ins. Co. v. B&L Trucking & Constr. Co.*, 82 Wn. App. 646, 920 P.2d 192 (1996), *aff'd*, 134 Wn.2d 413, 951 P.2d 250 (1998).  However,

ORDER
PAGE - 11

Defendant Slater also points to other states that have interpreted identical language to that at issue in this case, finding the language to be ambiguous.

For example, in *C. Brewer & Co. v. Marine Indem. Ins. Co. of Am.*, 135 Haw. 190, 347 P.3d 163 (2015), the Supreme Court of Hawai'i addressed a CGL policy containing a Limitation of Coverage to Designated Premises Endorsement purporting to limit coverage to a specified premises.  The lower court had granted summary judgment in favor of the Insurer, finding that the Endorsement precluded coverage to an off-site injury.  *Id* at 192.  The Hawai'i Supreme Court ultimately reversed that decision, stating:

> We hold that the James River DPE provides coverage for injury and damage that occurs on premises not listed in the Schedule if the injury or damage arises out of the ownership, maintenance or use of a designated premises.  In determining whether an injury or damage arose out of the use of a designated premises, we adopt the legal interpretation of "arising out of" in *American Guarantee and Liability Insurance Co. v. 1906 Co.*, 129 F.3d 802 (5th Cir. 1997): "The phrase 'arising out of' is ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of,' or 'flowing from.'  In the insurance context, this phrase is often interpreted to require a causal connection between the injuries alleged and the objects made subject to the phrase." 129 F.3d at 807.  We therefore hold that the DPE unambiguously provides coverage for negligence claims against C. Brewer arising out of the use of designated premises.
>
> We further hold that language in a designated premises endorsement "must be clear and unequivocal[]" to convert a CGL policy to a premises liability policy that limits coverage to injuries occurring on specific premises. *American Empire Surplus Lines Insurance Co. v. Chabad House of North Dade, Inc.*, 771 F. Supp. 2d 1336, 1343 (S.D. Fla. 2011), *aff'd*, 450 F. App'x 792 (11th Cir. 2011).  In this case, the DPE is not sufficiently "clear and unequivocal" to limit coverage to injuries occurring on the designated premises, as argued by James River.  Thus, the DPE does not limit liability to injury and damage occurring on designated premises.

*C. Brewer & Co.*, 135 Haw. at 193 (footnote omitted).

The Hawai'i court explained its reasoning in reaching that conclusion:

> The DPE, titled, "Limitation of Coverage to Designated Premises," states: "This insurance applies only to 'bodily injury', 'property damage', or

'personal and advertising injury' arising out of the ownership, maintenance or use of the premises shown in the above Schedule." The DPE lists "Locations 1-3." The parties are in agreement that "Locations 1-3" includes C. Brewer's corporate headquarters at 311 Pacific Street, but not the Dam site.

James River and C. Brewer present conflicting interpretations of the DPE. James River argues that the DPE unambiguously limits coverage under the policy to liability for injury and damage on premises listed in the Schedule, and thus it has no obligation to defend or indemnify C. Brewer against the Pflueger lawsuit because the Dam site is not listed. C. Brewer argues that the DPE is ambiguous as to whether injury and damage "arising out of" the "use" of listed premises is covered, contending that the "arising out of" language in the DPE requires broad construction in its favor.

We have held that "[a] contract is ambiguous when its terms are reasonably susceptible to more than one meaning." *Hawaiian Ass'n of Seventh-Day Adventists v. Wong*, 130 Haw. 36, 45, 305 P.3d 452, 461 (2013). We therefore begin by analyzing whether the positions advanced by the parties are reasonable interpretations of the policy's language.

James River cites to *Union American Insurance Co. v. Haitian Refugee Center/Sant Refijie Ayisyin, Inc.*, 858 So.2d 1076 (Fla. Dist. Ct. App. 2003), in support of its argument that the DPE must be construed to limit liability to designated premises. In *Union American*, a Haitian Refugee Center ("Center") allegedly failed to provide adequate security at a street rally it sponsored located far from and unrelated to the Center's headquarters, the designated premises, which led to the shooting of an individual at the rally by another individual in the crowd. 858 So.2d at 1077. The policy's designated premises endorsement limited coverage to "bodily injury . . . arising out of [t]he ownership, maintenance or use of the premises shown in the [s]chedule and operations necessary or incidental to those premises[.]" *Id*. (first and second bracket in original; third bracket added) (quoting insurance policy at issue). The District Court of Appeal of Florida for the Third District ("appeals court") reversed the lower court's holding that the policy provided coverage, concluding that the designated premises endorsement effectively converted the CGL policy into a premises liability policy despite the words "commercial lines policy" on the policy's cover sheet. 858 So.2d at 1078 n.1, 1079 (reversing judgment). The appeals court explained that providing coverage on the ground that the event was an operation necessary or incidental to the Center's business involved a judicial rewriting of the policy by substituting "business" for the policy word "premises." 858 So.2d at 1078. The appeals court stated: "This is a process in which we may not engage." *Id*.

. . .

ORDER
PAGE - 13

In this case, however, the injury and damage arguably relate to C. Brewer's "use" of its corporate headquarters to make negligent business decisions. *Union American* is therefore distinguishable.

C. Brewer contends that the policy provides coverage for injury and damage arising out of its "use" of its corporate headquarters to make negligent corporate decisions even though the resulting damage happened at the unlisted Dam site. In support, C. Brewer relies on *American Guarantee and Liability Insurance Co. v. 1906 Co.*, 129 F.3d 802 (5th Cir. 1997) (applying Mississippi state law), a case in which the court construed a designated premises endorsement with language similar to the James River DPE, to include coverage for injuries and damages occurring on a premises not listed in the endorsement.

In *American Guarantee*, an insurer sought a judgment that the CGL policy it sold to a Coca-Cola Bottling Company ("Coke Company") afforded no coverage or defense for injuries arising out of a photography studio, wholly-owned and operated as a division of the Coke Company, in which the Coke Company chief executive officer's (CEO) son, also an employee, surreptitiously videotaped female customers changing their clothes. 129 F.3d at 804. The designated premises endorsement at issue limited coverage to "'bodily injury,' 'property damage,' 'personal injury,' 'advertising injury' and medical expenses arising out of . . . [t]he ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises[.]" 129 F.3d at 806 (quoting insurance policy at issue). The studio, located a mile away from the Coke Company, was not a designated premises.

The Fifth Circuit held that the designated premises endorsement did not preclude coverage for negligence claims arising out of the use of the Coke Company headquarters, a designated premises, regarding supervisory actions over the studio and the CEO's son. 129 F.3d at 808. The Fifth Circuit concluded that the designated premises endorsement unambiguously covered injuries occurring at uncovered premises if a causal connection between the injuries and "use" of a designated premises existed. *See* 129 F.3d at 807 ("[T]he phrase 'arising out of' the 'use' of the designated premises requires that there be a causal connection between the injuries . . . and the designated premises . . . ."). In construing a causal connection, the Fifth Circuit opined as follows: "The phrase 'arising out of' is ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of,' or 'flowing from.' In the insurance context, this phrase is often interpreted to require a causal connection between the injuries alleged and the objects made subject to the phrase." *Id.* (internal citation omitted).

ORDER
PAGE - 14

The Fifth Circuit reasoned that the studio was owned and operated as a division of the Coke Company, the studio and Coke Company shared the same general checking account, employees of the studio were considered Coke Company employees, and all major business decisions concerning the studio, from the purchase of the equipment to the scope and ultimate termination of the business, were made at the Coke Company's headquarters, a designated premises. 129 F.3d at 807-08. The Fifth Circuit held that "[u]nder the circumstances, a factfinder could find a causal connection between [the Coke Company] and [the CEO's] supervisory activities, the operation of the designated premises, and the injuries that resulted from [the CEO's son's] intentional and tortious actions at [the studio]." 129 F.3d at 808.

Similarly, in this case, the System was owned and operated by KIC, a C. Brewer subsidiary, KIC's employees were considered employees of C. Brewer, and all major business decisions concerning the System, including the alleged failure to capitalize KIC, the entrance into various agreements to maintain the System, and the eventual sale of the land underlying the Reservoir, were apparently made at C. Brewer's corporate headquarters. Therefore, a causal connection could possibly be found between C. Brewer and its entrustment of the System to KIC, the operation of the designated premises, and the injuries that resulted from C. Brewer's allegedly negligent corporate decisions.

In addition, by relying on *Union American*, James River seeks to rewrite the term "arising out of" to limit liability to injury and damage occurring on designated premises. Such a construction of the DPE would effectively convert the James River policy from a CGL policy to a premises liability policy that limits coverage to certain premises. James River's argument contradicts the policy, which specifically states that it is a "commercial general liability" policy. In addition, such a construction contravenes general principles of insurance construction, which provide that policy language "must be construed liberally in favor of the insured and [any] ambiguities [must be] resolved against the insurer." *Dairy Rd. Partners*, 92 Hawai'i at 412, 992 P.2d at 107 (alteration in original).

In our view, *American Empire Surplus Lines Insurance Co. v. Chabad House of North Dade, Inc.*, 771 F. Supp. 2d 1336 (S.D. Fla. 2011), correctly analyzes the requirements for converting a CGL policy to a premises liability policy. The policy at issue in Chabad House is similar to the James River policy. Chabad House involved a "commercial general liability" policy that covered injury and damage occurring anywhere in the "coverage territory," defined in the policy as encompassing, at minimum, the United States, Canada, and Puerto Rico, and also contained a similarly worded designated premises endorsement. 771 F. Supp. 2d at 1339, 1343.

ORDER
PAGE - 15

Citing to *American Guarantee*, in which the designated premises were specifically incorporated into the policy on the declarations page so as to put the insured on notice that coverage was limited to certain premises, the *Chabad House* court held that language in a DPE used to convert a CGL to a premises liability policy "must be clear and unequivocal." 771 F. Supp.2d at 1343. We likewise hold that a DPE "must be clear and unequivocal[]" to convert a CGL policy to a premises liability policy in order to effectively limit coverage to injury or damage that occurs on undesignated premises. *Id.*

In this case, the James River DPE does not clearly convert the policy into a premises liability policy. The DPE is similarly incorporated by reference into the policy on the declarations page; however, the declarations page does not list the designated premises. Therefore, the DPE is not sufficiently clear and unequivocal to put the insured on notice and convert the policy. Accordingly, we reject James River's argument to construe the DPE as limiting coverage to injury and damage occurring on designated premises. *See* Dairy Rd. Partners, 92 Hawai'i at 412, 992 P.2d at 107 (holding that policy language "must be construed liberally in favor of the insured and [any] ambiguities [must be] resolved against the insurer.").

In further support of its position, C. Brewer contends that the inclusion of "personal and advertising injury" in the DPE "suggests that the parties may have intended to include coverage for negligent decisions made at a designated premises that resulted in injury and damages elsewhere." (quoting C. Brewer, mem. op. at 36). C. Brewer also notes that *Chabad House* found that the policy's broad coverage territory, which included the United States, Canada, Puerto Rico, and, under certain circumstances, other parts of the world, contradicted the designated premises endorsement. James River asserts that Brewer's interpretation is overly broad and renders the "arising out of" language meaningless.

As the ICA reasoned, decisions made at C. Brewer's corporate headquarters would likely be the cause of any advertising injury; however, the resulting injury would not occur on designated premises. In addition, the James River policy's broad coverage territory similarly encompasses the United States, Canada, Puerto Rico, and, under certain circumstances, other parts of the world. Therefore, C. Brewer's arguments further support its interpretation of the DPE.

*C. Brewer & Co.*, 135 Haw. at 196-199.

Likewise, in *State Auto & Casualty Underwriters v. Beeson*, 183 Colo. 284, 516 P.2d 623 (1973), the Supreme Court of Colorado used similar rationale to find coverage for a

personal injury that occurred when a man dropped a set of keys out of an apartment window, which hit his niece in the eye and ultimately resulted in the loss of her eye.   The court explained:

> Each of the apartment house policies provides coverage when the insured becomes legally obligated to pay damages as a result of personal injuries that arise out of the ownership, maintenance or use of the premises, and all operations necessary or incidental thereto.  These insurers contend that there was not a sufficient causal connection between Holly's injury and the ownership, maintenance, use or incidental operation of the apartments.  On the contrary, we agree with the trial court, which in turn was affirmed by the Court of Appeals, in its conclusion that the keeping of the keys to the pickup at the Race Street apartments was incidental to the operation of that apartment house; that it was the duty of David Olsen as real estate manager to keep the keys there; and that the act of throwing them out the window was incidental to the operation of the apartments.  We affirm the Court of Appeals in its determination as a matter of law that the policy on the Washington Street apartment house provides coverage.

*State Auto & Casualty Underwriters v. Beeson*, 183 Colo. at 289-291.

The same rationale applies to the instant action.  Here, the policy includes the same language as analyzed by the Hawai'i court.  Using the common legal definition of the term "arising out of," the decision to purchase the tow truck is sufficiently connected to the premises such that it could fall within the scope of the policy.  *See* Dkt. #33.  Moreover, the policy at issue in this case also contains the same "personal and advertising injury language" that supports an interpretation of the clause such that it contemplates injury stemming from a decision made on the premises but occurring elsewhere.  Finally, the coverage territory in the policy is defined as the United States of America, Dkt. #26, Ex. C at 13, which further supports a broad interpretation of the policy.  *See C. Brewer & Co.*, 135 Haw. at 199.

While Plaintiff relies on the case of *Westport Ins. Co. v. Anderson*, 31 Fed. Appx. 362 (9th Cir. Feb. 14, 2002), which affirmed the District Court's conclusion that coverage had not been improperly denied under a Designated Premises Endorsement, that case is an unpublished

ORDER
PAGE - 17

memorandum, with no precedential value, that fails to discuss the policy language or the District Court's reasons for its conclusion.  Accordingly, this Court cannot find that the case provides any persuasive authority to the contrary of those discussed above.

For all of these reasons, the Court will deny Plaintiff's motion for summary judgment to the extent it seeks an order declaring that Defendants' alleged injuries are excluded from coverage.

### 2.  Auto Exclusion

Having determined that the alleged injuries may fall within the scope of coverage, the Court next turns to whether they are excluded by the auto exclusion contained in the policy. Plaintiff argues that since the injury arose out of an auto accident, the policy's auto exclusion bars coverage. Dkt. #24 at 13-15.  The policy at issues contains the following exclusion:

**2.   Exclusions**

This insurance does not apply to:
. . .

**g.   Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

Dkt. #26, Ex. C at 16.  The policy defines an "Insured" as an employee acting within the course and scope of employment.  *Id.* at 21.  Plaintiff asserts that if Defendant Hoover is correct in the state court action that Mr. Malkuch was not acting in the course and scope of his employment

ORDER
PAGE - 18

while driving the vehicle, there can be no liability imputed to Mr. Hoover and therefore no coverage; but that, even if Mr. Malkuch was acting in the course and scope of his employment while driving the vehicle, the auto exclusion would specifically preclude coverage.  *Id.*

Defendant Hoover argues that there are questions of fact, including the status of Mr. Malkuch (whether he was an employee or not) at the time he was driving and the cause of the accident itself, which preclude the Court from determining whether the exclusion applies at this time.  Dkt. #29 at 12-13.

Defendant Slater argues that Plaintiff's arguments ignore the fact that if Mr. Malkuch is not an employee, he is not an "Insured" and the exclusion does not apply at all.  Dkt. #31 at 19-20.

The Court agrees with Defendant Hoover that there are questions of fact as to the status of Mr. Malkuch that preclude summary judgment at this time.   There is no way for this Court to properly analyze the exclusion without a factual determination of whether Mr. Malkuch was an "employee" and whether he was acting within the course and scope of his employment at the time of the accident.  Accordingly, the Court finds that summary judgment for any party as to this exclusion is not appropriate at this time.

### 3.  Efficient Proximate Cause

Defendant Hoover also argues that the efficient proximate cause doctrine precludes summary judgment.  Dkt. #29 at 8-9.  Having determined that there are other reasons to preclude summary judgment at this time, the Court need not address this argument.

## B.  Defendants' Counterclaims

Plaintiff has also moved this Court for an Order declaring that Defendant Slater's Counterclaim seeking an affirmative determination of coverage and Defendant Hoover's

ORDER
PAGE - 19

Counterclaims for Bad Faith and Insurance Fair Conduct Act ("IFCA") violations fail as a matter of law. Dkt. #24 at 15-18. The Court addresses those Counterclaims in turn, below.

### 1. Hoover's Bad Faith and IFCA Counterclaims

As an initial matter, the Court finds in favor of Plaintiff on Mr. Hoover's Bad Faith and IFCA Counterclaims, and dismisses those claims. Plaintiff argues that Mr. Hoover's breach of contract/bad faith claim is premature because it is defending Mr. Hoover in the underlying action under a reservation of rights, and because there is no judgment yet in the underlying action that could trigger the duty to indemnify. Dkt. #24 at 17. Plaintiff also argues that Defendant Hoover's IFCA claim is without merit because there has been no denial of coverage yet and because Mr. Hoover has failed to comply with the administrative requirements prior to bringing such a claim. *Id.* at 17-18.

Mr. Hoover fails to respond to Plaintiff's motion on these Counterclaims. *See* Dkt. #29. Accordingly, Mr. Hoover has also failed to raise any legal authority demonstrating that his Counterclaims have merit, or raise any evidence to the contrary of Plaintiff's assertions. Under the legal authority discussed by Plaintiff in support of its motion, the Court agrees that Mr. Hoover's Counterclaims lack merit. Therefore, the Court dismisses those claims.

### 2. Slater's Coverage Counterclaim

Plaintiff also seeks to dismiss Defendant Slater's Counterclaim asking for an affirmative declaration of coverage. Dkt. #24 at 15-17. Plaintiff argues that Mr. Slater is a third party who is a stranger to the insurance contract and therefore has no standing to bring his claim. *Id.* Defendant Slater responds that under Ninth Circuit case law, Defendant Slater does have standing. Dkt. #31 at 20-22. The Court disagrees with Defendant Slater.

The cases argued by Defendant Slater do not stand for the proposition that he has standing to raise a Counterclaim.  Rather, they stand for the proposition that, as an injured third party, he has the right to defend against the declaratory action.  *See*, *e.g.*, *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1190 (9th Cir. 2009) ("Default was not entered against Northwest, so there is no valid basis to deny it the opportunity to try to defend against Westchester's claim for declaratory relief.").  On the other hand, where an injured third party has not received a judgment in an underlying action, courts have found that such parties lack standing to bring an affirmative claim against an Insurer[1]:

> The only standing [a claimant] has to obtain a declaration of his rights, status, and legal relationship under [insurance] contracts is if he is a party to the contracts or he is a third party beneficiary to the contracts. Being neither, [claimant] has no standing to maintain a direct action for declaratory judgment against [an insurance company]. The only exception to this rule is where the liability of the insured to pay an injured party has been established by judgment or written agreement among the injured party, the insured and the insurer, in which case a declaratory judgment action in the nature of an equitable garnishment action may be maintained.

*Evanston Ins. Co. v. Harris Med. Assocs., LLC*, 2013 U.S. Dist. LEXIS 96031, *6-7 (E.D. Mo. July 10, 2013) (quoting *Carden v. Missouri Intergovernmental Risk Mgt. Ass'n*, 258 S.W.3d 547, 558 (Mo. App. 2008) (internal citations omitted)).  The Missouri case is consistent with cases in the Ninth Circuit discussing third party standing in the insurance context.  *See*, *e.g.*, *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 1115, 1123 (9th Cir. 2010) (explaining that at this stage, Plaintiff's claims involve future events that are too uncertain and speculative to permit Plaintiff to proceed with his lawsuit); *Factory Sales & Eng'g, Inc. v. Factory Mut. Ins. Co.*, 2015 U.S. Dist. LEXIS 79413, *15-17 (W.D. Wash. June 18, 2015) (explaining that someone who is a third party *to the insurance contract* or that has shown injury in fact, has

---

[1]  It does not appear that either Washington state courts or the Ninth Circuit Court of Appeals has addressed this question directly.

ORDER
PAGE - 21

standing to bring a claim under Washington state and federal declaratory judgment law). Accordingly, the Court agrees that Defendant Slater lacks standing at this time to bring his Counterclaim and it should be dismissed.

## IV.   CONCLUSION

Having reviewed the parties' cross-motions for summary judgment, the responses thereto and replies in support thereof, along with all supporting declarations and exhibits and the remainder of the record, the Court hereby finds and ORDERS:

1. Plaintiff's Motion for Summary Judgment (Dkt. #24) is GRANTED IN PART and DENIED IN PART for the reasons discussed above.

2. Defendant Slater's Cross-Motion for Summary Judgment (Dkt. #31) is DENIED for the reasons discussed above.

3. Defendant Hoover's bad faith and IFCA Counterclaims are DISMISSED in their entirety for the reasons discussed above.

4. Defendant Slater's Counterclaim for an affirmative declaration of coverage is DISMISSED in its entirety for the reasons discussed above.

DATED this 30th day of March 2016.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 22